IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE JONES,

    Petitioner,               No. CIV S-05-1486 GEB GGH P

    vs.

THOMAS L. CAREY, et al.,

    Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1994 petitioner was convicted of second degree murder and sentenced to fifteen years to life.[1] In the instant petition, petitioner alleges that he has been held past his release date and has been improperly classified as a "life prisoner." Petitioner argues that the California Board of Prison Terms (BPT) has no authority to make any determination regarding his sentence.

    After carefully considering the record, the court recommends that the petition be denied.

---

[1] Petitioner was originally convicted of first degree murder and sentenced to 25 years to life. The second degree murder conviction was entered after appeal.

1

## II. AEDPA

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In reviewing a state court's summary denial of a habeas petition, this court must "look through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

In the instant case, both the California Supreme Court and California Court of Appeal issued unexplained decisions denying petitioner's state habeas petitions which raised the claims raised in the instant petition. Respondent's Answer, Exhibits 6, 7. The Solano County Superior Court issued a short order denying the petition on the following grounds: "The Board of Prison Terms has properly classified petitioner." Respondent's Answer, Exhibit 5. This opinion

1 did not address the merits of petitioner's constitutional claim.  Accordingly, because no state
2 court issued a reasoned decision addressing the merits of petitioner's federal claim, the court will
3 conduct an independent review of the record to determine whether the denial of petitioner's
4 claims was an unreasonable application of clearly established Supreme Court authority.

5 III. Discussion

6       Petitioner argues that he has been incarcerated beyond his release date.  The basis
7 of this claim appears to be that petitioner should have been released after he served fifteen years
8 minus the time earned for various credits, including good time and work credits.  Petitioner also
9 argues that his sentence has been illegally converted from 15 years to life to life with the
10 possibility of parole.  Finally, petitioner argues that the BPT miscalculated his sentence by not
11 awarding proper conduct credits pursuant to Cal. Penal Code § 190.

12       Respondent first argues that petitioner's claims should be denied because they are
13 predicated on state law.  The court finds that petitioner is challenging the interpretation and
14 application of state law as it applies to his sentence.  By finding that the state courts have ruled
15 on petitioner's claims concerning the interpretation and application of state sentencing law, it
16 necessarily follows that the alleged improper application of state law is not subject to review by
17 federal court.  Lewis v. Jeffers, 497 U.S. 764, 779, 110 S. Ct. 3092, 2102 (1990).  Accordingly,
18 the court finds that the petition should be denied on this ground.

19       The court makes the following observations about petitioner's claims.  First,
20 petitioner was sentenced to fifteen years to life.  His maximum term is life in prison and he has
21 not been kept in beyond the end of that term.  Petitioner has confused the minimum term
22 necessary to be served before parole could be implemented *at its earliest* (the MEPD) with a
23 determinate sentence of fifteen years.  Indeed, BPT is not required to find petitioner even eligible
24 for a parole setting within fifteen years.  Under California law, the BPT has the sole authority to
25 grant parole.  In re Rosenkrantz, 29 Cal.4th 616, 653, 659, 128 Cal.Rptr.3d 104, 137, 142 (2002).
26 Petitioner could spend the rest of his life in prison without ever becoming eligible for parole.

1         Second, respondent's exhibits indicate that petitioner did receive the proper

2 credits pursuant to Cal. Penal Code § 190. The background to this claim is as follows:

> Section 190 is the principal Penal Code Provision on the punishment for murder. It was originally adopted by initiative (Proposition 7, the so-called Briggs Initiative) at the General Election of November 7, 1978. In its current form, subdivision (e) of section 190 now states: "Article 2.5 (commencing with Section 2930) of Chapter 7 of title 1 of Part 3 shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentence pursuant to this section shall not be released on parole prior to serving the minimum term of confinement prescribed by this section." Under this subdivision, then, a convicted murderer is not entitled to any credits available to others pursuant to § 2930, et seq., which set out provisions for prison time credits for good behavior, participation, and work time in prison. This language was adopted by the Legislature in 1996 and again in 1997. However, because section 190 was originally enacted by initiative, the Legislature was required to submit its adoption of these subsequent amendments to the electorate for approval. (Cal. Const., art. II, § 10, subd. (c); In re Oluwa (1989) 207 Cal.App.3d 439, 442-445, 255 Cal.Rptr.35.) In fact, the pertinent language of current subdivision (e) was not submitted to an approved by the voters until the election held on June 2, 1998. Only after this electoral approval did it become effective as of June 3, 1998. (Stats. 1996, ch. 598, § 1; Stats. 1997, ch. 413, § 1 (Prop. 222), approved June 2, 1998.)

People v. Hutchins, 90 Cal.App.4th 1308, 1315, 109 Cal.Rptr.2d 643, 648 (2001).

        The version of section 190 still in effect in 1998 provided, in pertinent part, as follows: "Except as provided in subdivision (b), Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 15, 20, or 25 years in the state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time." The limits on conduct credits contained in the current version of § 190 do not apply to petitioner because they became operative after his commitment offense. Hutchins, 90 Cal.App.4th at 1316, 109 Cal.Rptr.2d at 649.

        Petitioner appears to argue that respondents have applied the post-1998 version of § 190 and denied him conduct credits. Respondent's exhibits indicate that petitioner did receive the pre-1998 § 190 credits to which he was entitled. Respondent's Exhibit 3. Applying these credits, petitioner's Minimum Eligible Parole Date was calculated to be March 27, 2003. Id.

\\\\\

1 | Petitioner may be arguing that he was entitled to be released when he reached his
2 | MEPD.  As discussed above, the BPT considers whether petitioner is suitable for parole once he
3 | reaches his MEPD.  He is not entitled to release at that time.
4 | After conducting an independent review, the court finds that the denial of
5 | petitioner's claims by the California Supreme Court Court was not an unreasonable application
6 | of clearly established Supreme Court authority.  Accordingly, the petition should be denied.
7 | Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
8 | a petition for writ of habeas corpus should be denied.
9 | These findings and recommendations are submitted to the United States District
10 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
11 | days after being served with these findings and recommendations, any party may file written
12 | objections with the court and serve a copy on all parties.  Such a document should be captioned
13 | "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
14 | shall be served and filed within ten days after service of the objections.  The parties are advised
15 | that failure to file objections within the specified time may waive the right to appeal the District
16 | Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
17 | DATED: 2/13/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
jo1486.157